# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

vs.                                        2:17-CR-207-VEH-HNJ-2

**CLIFTON FORD JORDAN, and**
**DERRICK JOHNSON,**
       **Defendants.**

## MEMORANDUM OPINION AND ORDER

**I.    Procedural History**

Now pending before the Court is a Motion To Compel (Doc. 25) filed by Defendant CLIFTON JORDAN. Defendant DERRICK JOHNSON has joined in that motion. (Doc. 30; docket entry Order dated 6/9/2017). Defendant DERRICK JOHNSON has also filed a supplement to the motion. (See doc. 37, docketed as a pending motion). The Government has filed a unified response (Doc. 47) to the motion as supplemented. On July 10, 2017, Magistrate Judge Herman N. Johnson, Jr. entered an Order (Doc. 63) denying in part and otherwise finding moot the motion as supplemented.

On July 25, 2017, both Defendants jointly filed "Rule 59(a) Objections To Portions of the Magistrate Judge's Order." (Doc. 68). The United States has responded. (Doc. 71). For the reasons stated below, the Court finds that the Objections are due to be, and hereby are, **OVERRULED**.

## II. Standard of Review

The Supreme Court has found that a district court may "review in whole," "[review] in part anew," or "wholly [] ignore" a magistrate judge's order. *Mathews v. Weber*, 423 U.S. 261, 263 (1976). "The authority and the responsibility to make an informed, final determination, [the Supreme Court] emphasize[s], remains with the [district] judge." *Id*. at 271. The district court retains total control and jurisdiction over "the entire process." *United States v. Raddatz*, 447 U.S. 667, 681 (1980); *see also Webb v. Califano*, 468 F.Supp. 825, 830 (E.D. Cal. 1979) ("[T]he district court *must* give a de novo review when timely objections are filed...." (emphasis added)).

However, "[n]either the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct." *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (internal quotation marks omitted) (quoting *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)). It is incumbent upon the parties to timely raise any objections that they may have regarding a magistrate judge's findings contained in a report and recommendation, as the failure to do so subsequently waives or abandons the issue, even if such matter was presented at the magistrate judge level. *See, e.g., United States v. Pilati*, 627 F.3d 1360, 1365 (11th Cir. 2010)

("While Pilati raised the issue of not being convicted of a qualifying offense before the magistrate judge, he did not raise this issue in his appeal to the district court. Thus, this argument has been waived or abandoned by his failure to raise it on appeal to the district court."). However, the district judge has discretion to consider <u>or</u> to decline to consider arguments that were not raised before the magistrate judge. *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006); *see also Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("Thus, we answer the question left open in *Stephens* and hold that a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982).[1] "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id*. at 410. Indeed, a contrary rule "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve

---

[1] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by a Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n. 4 (11th Cir. 2009) (discussing the continuing validity of *Nettles*).

the workload of the district court." *Williams*, 557 F.3d at 1292 (internal quotation marks omitted) (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

## III. Objections

Defendants specifically limit their Objections to "defense requests 3 through 6 (Doc. 25, at 6-7) as denied by the magistrate's order. (Doc. 63, at 4-5)." (Doc 68 at 1, fn.1). As Objections, Defendants state that the Order is "contrary to law and/or clearly erroneous in that the Order fails to address the fundamental due process aspects of Jordan's original motion. As such, [the Defendants] object[] to and request[] [that] this Honorable Court 'modify' and/or 'set aside' the Magistrate's Order as to the portions of the Order dealing with defense requests 3 through 6. (Doc. 25, at 6-7)." (Doc. 68 at 1-2). Those "due process concerns" are later identified as those arising under the Fifth and Sixth Amendments to the United States Constitution. Specifically, they state:

> In his original motion Jordan stated that the motion to compel was made "pursuant to the Fifth and Sixth Amendments to the Constitution of the United States of America *and Brady, Giglio, Kyles* and its progeny" and that the requests were made "so that the defense can adequately investigate and defend this matter." As such, the requests herein were made with Fifth and Sixth Amendment due process concerns in mind.

(*Id*. at 5) (internal citation omitted).

The Defendants provide more particularity in section III. of their

4

Objections, where they criticize the "[t]he magistrate's order [because it] focuses exclusive[ly] on the exculpatory nature of the material requested. (Doc. 63, at 4-5)." (*Id*. at 6). Although the Defendants

> continue with their argument that exculpatory information would be uncovered with disclosure of the information requested [they also assert as valid] ... the remaining rationale for current disclosure is so that the defendants may effectively assert their rights to present a defense, investigate the allegations, to compel the attendance of witnesses and to present witnesses on the defendant's behalf.

(*Id*. at 6 fn. 6).

They state that the material requested:

1. [C]ould [help the defense] try to determine the involvement of others [who are referred to in Government documents produced to date only by nicknames] in and their expectation of the intended disposition of their drugs and how it was accomplished [thereby] lead[ing] the defense to determine whether either [of those individuals] were [sic] suspicious about whether their shipment had been interdicted and what steps they took to insulate themselves and to protect their own interests.

2. [If the defense knew the identities of the people identified to date only by nicknames, those individuals] could assist the defense in finding out how Derrick Johnson came to be in possession of the car, etc. .... [sic] as well as whether that circumstance was done innocently or with guilty knowledge [on the part of Derrick Johnson] ... [or with Mr. Johnson having been] told that the car contained some but a lesser amount of cocaine that the 14 kilos which would have a substantial impact on sentencing for both defendants.

3. [If the defense knew the identities of the people who have been identified to date only by nicknames] [i]t is also very likely that neither of these two individuals could identify Mr. Jordan [and the

5

defense would be able to learn this].

(*Id*. at 6-7).

The Defendants further state that

> [i]n order to explore these issues the defense has moved the court to compel the Government to provide unredacted reports revealing the identities of [these two people identified to date only by nicknames] and any other persons known to have been involved in the transport, receipts, and delivery of these drugs. Jordan and Johnson object to the magistrate's denial of this request.

and

> [The Defendants seek other materials] to assist the defense in identifying [the individuals currently identified to the defense only by nicknames] should the Government continue to prevail on the question of whether the Government can otherwise protect the identities of the guilty [and to] bolster [hypothetical] ... testimony as a defense witness.

(*Id*. at 7).

The Defendants also seek the telephone numbers of these two insufficiently identified individuals. (*Id*. at 8). They say they could "use that information to compare the call records, once obtained, in order to see if there is any contact with Johnson or Jordan's phones is revealed." [*Sic*.]. (*Id*.). They further assert that "investigators could use the contact information provided to attempt to interview both [of these insufficiently identified individuals] and their known relatives and associates." (*Id*.).

Finally, the Defendants argue that the Government must identify the

insufficiently identified individuals, who the Defendants refer to as "the guilty" and/or as "unindicted co-conspirators". (*Id*. at 8).

## IV. Analysis

The Defendants have made exclusively legal objections. Thus, the Court reviews the Order *de novo* as to the objections raised. In sum, the Defendants assert that, although neither they nor the Government at this time know, other than by nicknames, the identities of two individuals who clearly are unindicted co-conspirators, they are entitled to be given whatever information the Government has from which the Defendants might be able to determine their identities. They argue that the magistrate judge erred in assessing their Motion To Compel solely through the lens of whether or not the information sought could lead to exculpatory evidence when, in fact, they seek the information not only for that reason but also to "effectively assert their rights to present a defense, investigate the allegations, to compel the attendance of witnesses and to present witnesses on the defendant's behalf." (*Id*. at 6, fn 6).

In essence, the Defendants argue that compliance with the disclosure requirements of FED. R. CRIM. P. 16 is constitutionally insufficient.[2] They cite no authority that supports this startling argument, and this Court has not found any.

---

[2] The Defendants have <u>not</u> argued that the Government has not complied with that Rule.

The Court will first discuss the disclosure requirements of Rule 16 in the context of a criminal defendant's rights under the Fifth and Sixth Amendments. It will then address each and every authority cited by the Defendants.

### A. Fifth and Sixth Amendment Rights and FED. R. CRIM. P. 16

As relevant in the context of the matter presently before this Court, a person charged with a crime possesses both the right to due process of law (Fifth Amendment) and the rights "to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the Assistance of Counsel for his defence." (Sixth Amendment).

In *United States v. Jordan*, 316 F.3d 1215 (11th Cir. 2003) the Eleventh Circuit Court of Appeals has set out in detail the Government's disclosure requirements in a criminal case. They began their analysis with the requirements that apply pretrial.

> Our starting point is Rule 16(a) of the Federal Rules of Criminal Procedure, which spells out the materials the prosecution must produce on the defendant's request.
>
> ***
>
> Rule 16(a)(1)(C) addresses the discovery of documents and tangible objects. Under Rule 16(a)(1)(C), the government must permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, if the requested items (1) are material to

8

the preparation of the defendant's defense; (2) are intended for use by the government as evidence in chief at the trial; or (3) were obtained from or belong to the defendant.[3]

<u>An item in the first category need not be disclosed unless the defendant demonstrates that it is material to the preparation of his defense. A general description of the item will not suffice; neither will a conclusory argument that the requested item is material to the defense. Rather, the defendant must make a specific request for the item together with an explanation of how it will be "helpful to the defense."</u> *See, e.g., United States v. Marshall*, 132 F.3d 63, 67–68 (D.C.Cir.1998) ("helpful" means relevant to preparation of the defense <u>and not necessarily exculpatory</u>). As the Fifth Circuit put it in *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir.1978) (quoting *United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir.1975)), the defendant must "show" "more than that the [item] bears some abstract logical relationship to the issues in the case.... There must be some indication that the pretrial disclosure of the [item] would ... enable [ ] the defendant <u>significantly to alter the quantum of proof in his favor</u>."

The discovery afforded by Rule 16(a)(1)(C) is limited by Rules 16(a)(2) and (3). Rule 16(a)(2) exempts from disclosure "reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case," and "statements made by government witnesses or prospective government witnesses." Rule 16(a)(3) exempts the discovery of statements of persons who have testified before a grand jury. The *Jencks Act*, of course, mandates that a statement by a prospective prosecution witness to an investigative agent or the grand jury must be provided to the defense after the witness has testified on direct examination. In addition to the government's discovery obligations under Rule 16(a), the government must also honor the defendant's constitutional rights, particularly the due process right *Brady v. Maryland* established. <u>*Brady* requires the prosecutor to turn over to the defense evidence that is favorable to the accused, even though it is not subject to discovery under Rule 16(a),</u>

---

[3] Only items in the first category are presently at issue.

9

since, eventually, such evidence may "undermine[ ] the confidence in the outcome of the trial."[4] <u>The defendant's right to the disclosure of favorable evidence, however, does not "create a broad, constitutionally required right of discovery."</u> Indeed, a "defendant's right to discover exculpatory evidence does not include the unsupervised right to search through the [government's] files," nor does the right require the prosecution to deliver its entire file to the defense. Rather, *Brady* obligates the government to disclose only favorable evidence that is "material." The "touchstone of materiality is a 'reasonable probability' of a different result." Accordingly, under *Brady*, the government need only disclose during pretrial discovery (or later, at the trial) evidence which, in the eyes of a neutral and objective observer, could alter the outcome of the proceedings.

*U.S. v. Jordan*, 316 F.3d at 1249-52 (footnotes in original omitted) (some internal citations omitted) (emphasis supplied).

Thus, Rule 16 requires, upon request, and subject to certain exceptions not relevant here, that the Government make available to a criminal defendant pretrial both inculpatory and exculpatory evidence, while *Brady* only requires Government pretrial disclosure of evidence that is favorable to the defendant. Pretrial disclosures under Rule 16 and under *Brady* are alike, however, in that only <u>material</u> evidence need be disclosed. And the Eleventh Circuit has told us what "material" means in this context: "a 'reasonable probability' of a different result."

---

[4] There is no *Brady* issue before this Court. Rather, as stated previously herein, the Defendants have objected that the magistrate judge erred in in assessing their Motion To Compel solely through the lens of whether or not the information sought could lead to exculpatory evidence when, in fact, they seek the information not only for that reason but also to "effectively assert their rights to present a defense, investigate the allegations, to compel the attendance of witnesses and to present witnesses on the defendant's behalf." (Doc. 68 at 6, fn 6).

*U.S. v. Jordan*, 316 F.3d at 52 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995)).

In *United States v. Armstrong*, the Supreme Court clarified that, "in the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief." 517 U.S. 456, 462, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). Thus, in order for "the defendant to show materiality under this rule, there must be some indication that the pretrial disclosure of the disputed evidence would [ ] enable[ ] the defendant significantly to alter the quantum of proof <u>in his favor</u>." *U.S. v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010) (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir.1975)) (internal quotations omitted) (emphasis supplied). Thus, "<u>[e]vidence is material as long as there is a strong indication that it will play an important role</u> in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Caro*, 597 F.3d at 621 (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir.1993)) (internal quotations omitted) (emphasis supplied).

The Defendants argue that the Government's failure to provide them the information they seek deprives them of their due process right to present a defense. However, as set out in the authorities cited above, and assuming that the Government has complied with Rule 16 – a fact not at issue here – the Defendants

have received more than the Constitution requires. *See United States v. Baker*, 453 F.3d 419, 424 (7th Cir.2006) ("Rule 16 ... is broader than *Brady*."); *United States v. Conder*, 423 F.2d 904, 911 (6th Cir.1970) ("We are ... of the view that the disclosure required by Rule 16 is much broader than that required by the due process standards of *Brady*.")). Further, the Defendants have not shown "a strong indication" that the information they seek "will play an important role" in their defense; they have only speculated about role it might play. Mere speculation is not sufficient.

The Defendants cite *Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L.Ed.2d 1019 (1967), as support for their argument. However, that case does not in fact support their argument. The Supreme Court summarized the facts of that case as follows.

> Petitioner, Jackie Washington, was convicted in Dallas County, Texas, of murder with malice and was sentenced by a jury to 50 years in prison. The prosecution's evidence showed that petitioner, an 18-year-old youth, had dated a girl named Jean Carter until her mother had forbidden her to see him. The girl thereafter began dating another boy, the deceased. Evidently motivated by jealousy, petitioner with several other boys began driving around the City of Dallas on the night of August 29, 1964, looking for a gun. The search eventually led to one Charles Fuller, who joined the group with his shotgun. After obtaining some shells from another source, the group of boys proceeded to Jean Carter's home, where Jean, her family and the deceased were having supper. Some of the boys threw bricks at the house and then ran back to the car, leaving petitioner and Fuller alone in front of the house with the shotgun. At the sound of the

bricks the deceased and Jean Carter's mother rushed out on the porch to investigate. The shotgun was fired by either petitioner or Fuller, and the deceased was fatally wounded. Shortly afterward petitioner and Fuller came running back to the car where the other boys waited, with Fuller carrying the shotgun.

Petitioner testified in his own behalf. He claimed that Fuller, who was intoxicated, had taken the gun from him, and that he had unsuccessfully tried to persuade Fuller to leave before the shooting. Fuller had insisted that he was going to shoot someone, and petitioner had run back to the automobile. He saw the girl's mother come out of the door as he began running, and he subsequently heard the shot. At the time, he had thought that Fuller had shot the woman. In support of his version of the facts, petitioner offered the testimony of Fuller. The record indicates that Fuller would have testified that petitioner pulled at him and tried to persuade him to leave, and that petitioner ran before Fuller fired the fatal shot.

<u>It is undisputed that Fuller's testimony would have been relevant and material, and that it was vital to the defense.</u> Fuller was the only person other than petitioner who knew exactly who had fired the shotgun and whether petitioner had at the last minute attempted to prevent the shooting. Fuller, however, had been previously convicted of the same murder and sentenced to 50 years in prison, and he was confined in the Dallas County jail. Two Texas statutes provided at the time of the trial in this case that persons charged or convicted as coparticipants in the same crime could not testify for one another, although there was no bar to their testifying for the State. On the basis of these statutes the trial judge sustained the State's objection and refused to allow Fuller to testify.

*Washington v. Texas*, 388 U.S. at 15–17.

On these facts, the Court stated,

We hold that the petitioner in this case was denied his right to have compulsory process for obtaining witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness

13

who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been <u>relevant and material</u> to the defense.

(*Id*. at 23) (emphasis supplied).

Here, the Defendants have not demonstrated that the testimony of these unindicted co-conspirators would be "relevant and material to the[ir] defense." Rather, they have merely speculated about what they might learn if they were able to identify the co-conspirators and thus possibly investigate them or question them.

### B. *Strickland v. Washington*

The Defendants also cite *Strickland v. Washington*[5] for the unremarkable proposition that "[C]ounsel has a duty to make reasonable investigations." (Doc. 68 at 5, fn. 4). However, *Strickland* does not stand for the proposition that defense counsel's duty to make reasonable investigations calls into question the scope of the Government's disclosure obligations set out in Rule 16. Thus, *Strickland* does not support the Defendants' arguments.

### C. *United States v. Jain*

The Defendants also cite *United States v. Jain*, No. CR-08-00197 RMW HRL, 2008 WL 3289945, at *3 (N.D. Cal. Aug. 6, 2008) as support for their

---

[5] *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed. 2d 674 (1984).

argument that any time information is redacted from Rule 16 disclosures, the constitutional rights of the defendants who have received redacted disclosures have been violated. However, this argument is a "bridge too far," for it presupposes that the information redacted is, as the Defendants put it, "essential information." (Doc. 68 at 6). Here, however, unlike the defendants in *Jain*, the Defendants have wholly failed to show that the information redacted would <u>actually be helpful</u> to their defense.

   **D.**   ***United States v. Simpson***

Finally, the Defendants argue that the Government is, without authority, "protect[ing] the identities, images and phone numbers of the guilty." (Doc. 68 at 8). They say

> [t]he Government has suggested that disclosure of any and all of the information requested could endanger its witness or interfere with its investigation [but] has not offered, negotiated for or filed for a protective order of any type to assert the validity of those claims or to attempt to tailor such an order so that the interests of both parties may be served and co-exist. Rather, the Government has sought to have "its cake and eat it too."

(Doc. 68 at 8).

In support of this argument, the Defendants cite *United States v. Simpson*, No. 3:09-CR-249-D 06, 2010 WL 3633611 at *2 (N.D. Tex. Sept. 20, 2010) for the proposition that "media requests for disclosure have been met with greater

15

disclosure requirements [than those contained in Rule 16] and in such circumstances the government has been required to establish 'good cause' to redact the names of unindicted co-conspirators from media outlets." (*Id*. at fn. 8). They then imply that a Government showing of "good cause" is necessary here. (*Id*.) ("No showing of any type has been made here.").

*Simpson* is simply inapposite to such a point that the Defendants' reliance on it is confusing. In that case, the Government had given the defendant (Simpson) the names of the unindicted co-conspirators. However, the Government had filed, under seal, an ex parte application (<u>which Simpson had a copy of</u>) for a post-indictment restraining order. The court had issued a protective order prohibiting dissemination (including by Simpson) of the Government's application. Simpson wanted to be relieved of that restraining order so that he could disseminate the application. The Government did not oppose unsealing the application, provided that the names, telephone numbers, and email and physical addresses of unindicted persons were redacted.

The court held, first, that Simpson's rights under the Sixth Amendment simply were not implicated by this non-trial proceeding (the court's "sealing and prohibiting disclosure of documents intended to prevent the disposition of assets and to protect private information about unindicted persons"). *Id*. at *1. The court

16

then held that, although sealing the information was within the court's authority and proper at the time the order was entered, <u>there no longer appeared to be any need for it, since "almost all of the charged defendants have been arrested, and the property has presumably been secured."</u> (*Id*. at *1) (emphasis supplied). However, the court also allowed the Government to show "good cause" why it should be allowed to continue to <u>redact from public filings</u> the names of unindicted third parties who apparently were named in the application but against whom the Government would not be seeking indictment (including, for all this Court can tell, the names of totally innocent parties).

## V. Conclusion

The Defendants have failed to show that the information that they seek is both relevant (that is, that it will "play an important role" in) and helpful (by "uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal") to their defense.[6] Accordingly, their Objections are due to be, and hereby are, **OVERRULED**. The Motion To Compel Discovery (Doc. 25) is **DENIED**.

---

[6] Of course, exculpatory materials would meet these criteria, but these Defendants' objections are solely focused on materials that are <u>not</u> *Brady* materials.

**DONE** and **ORDERED** this the 14th day of August, 2017.

                                          **VIRGINIA EMERSON HOPKINS**
                                          United States District Judge